## BERNARD HECK v. INTERNATIONAL SMOKELESS POWDER COMPANY.

Argued June 5, 1908—Decided November 9, 1908.

1. A superintendent who selects from a pile of lumber certain planks, and instructs employes who are working under him to use those planks in the work upon which they are engaged, represents the employer in making the selection; and the employer is liable to an employe who is injured, while engaged in the work, by reason of the unsound condition of one of the selected planks.
2. An error of law, in the charge to the jury, which is not injurious to the party against whom the verdict is rendered, affords no ground for setting aside the verdict.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCH-ARD and MINTURN.

For the rule, *Alan H. Strong*.

*Contra, Robert Adrain* and *Frederick M. P. Pearse*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff sues for an injury sustained by him while in the employ of the defendant company by being caught under an armature, or dynamo drum, which was being moved by a gang of men, of which the plaintiff was one, at the works of the defendant company. The armature weighed between two and three tons. It was being unloaded from a wagon by means of a skid, formed by two planks eighteen feet long, ten inches wide, and three inches thick, laid from the floor of the wagon to the ground, and supported at intermediate points by heavy timbers. One of the planks broke under the weight of the armature, and it slid off and down upon the plaintiff, pinning

him to the ground and seriously injuring him. The breaking
of this plank was due to a crack, or leaf break, in it. The two
planks which were used in constructing the skid were taken
from a pile of lumber which lay within a few feet of the
point where the wagon was standing, by the instruction of
Mr. Martin, the superintendent, or manager, of the defend-
ant company at its works. Just what instructions the super-
intendent gave to the plaintiff and his fellow-workmen with
relation to the taking of the planks is in dispute, the case
upon the part of the plaintiff being that the two planks
actually used were selected by the superintendent, and the
proofs on the part of the defendant being to the effect that
the superintendent instructed the plaintiff, and those who
worked with him, to select such planks as they needed from
the pile. It further appeared in the case that there were in
the pile a sufficient number of sound planks from which to
construct a safe skid. The trial of the case resulted in a
verdict for the plaintiff.

The first ground upon which we are asked to set aside this
verdict is that the selection of the defective plank is not
chargeable to the master. The argument in support of this
contention is that the master discharged his whole duty as
to using reasonable care to supply safe appliances, by fur-
nishing a sufficient number of sound planks for the construc-
tion of a safe skid. But this argument assumes too much.
The instruction of the court to the jury was that if the
plaintiff, or any one of those who were engaged with him in
the work of unloading the armature, selected the defective
plank from out of the pile, there could be no recovery. The
verdict of the jury, consequently, must rest upon a finding
that the selection of the particular planks was made by Mar-
tin. This being so, the master did not furnish material out
of which the plaintiff was at liberty to select a safe appliance;
for, in directing that two specific planks should be used,
Martin was acting as the representative of the master. He
was performing a duty which the master could not delegate
to a fellow-servant of the plaintiff. He was furnishing the

particular appliance which the plaintiff was required to use in the performance of the work upon which he was engaged. The above principle, therefore, to which the defendant has appealed, has no application to the facts found.

The trial court, in its instruction to the jury, left it to them, in case they found the selection of the planks was made by Martin, to say whether, in so doing, he was acting as a fellow-servant of the plaintiff, or as the *alter ego* of the master, and the defendant insists that this instruction was erroneous, and justifies a setting aside of the verdict. We concur with counsel in the view that this instruction was improper, but it does not justify a reversal of the verdict. The question whether Martin, in so doing, represented the master, was one of law to be determined by the court, and not of fact to be settled by the jury. The error, however, was harmful to the plaintiff rather than to the defendant, for, as has already been stated, Martin, in making the selection, was performing a duty which the law cast upon the defendant, and which it could not delegate, and the court should have so advised the jury.

We find nothing in the conduct of the trial which would justify an interference with the verdict. The damages, however, we think are excessive. The verdict was for $7,500. The plaintiff, at the time of his injury, was earning from a dollar and a half to a dollar and seventy-five cents a day. His injuries, although very serious, and, to some extent, permanent, have not entirely incapacitated him from work, and it is not likely that such a result will occur in the future. If he will consent to reduce the amount of the award to $4,000 he may enter judgment for that amount, otherwise the rule to show cause will be made absolute.